IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| KLAUSNER TECHNOLOGIES, INC.,<br>a New York corporation, | §<br>§<br>§ | CIVIL ACTION NO. 6:12 CV 180 |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | **JURY TRIAL DEMANDED** |
| UNITED STATES CELLULAR<br>CORPORATION, a Delaware corporation, | §<br>§<br>§ | |
| Defendant. | §<br>§ | |

**DEFENDANT UNITED STATES CELLULAR CORPORATION'S MOTION TO
DISMISS PURSUANT TO RULE 12(b)(3) FOR IMPROPER VENUE, OR,
IN THE ALTERNATIVE, TO TRANSFER VENUE**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

      A.    THE PARTIES ........................................................................................ 2

      B.    U.S. CELLULAR IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE
            EASTERN DISTRICT OF TEXAS. ............................................................. 3

III.  ARGUMENT .................................................................................................... 6

      A.    THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE BECAUSE
            PERSONAL JURISDICTION WOULD NOT EXIST OVER U.S. CELLULAR IN THE
            EASTERN DISTRICT OF TEXAS. ............................................................. 6

            1.    General personal jurisdiction would not exist over U.S. Cellular
                  because U.S. Cellular has not carried on "continuous and
                  systematic" contacts within the Eastern District......................... 7

            2.    Specific personal jurisdiction also would not exist over U.S.
                  Cellular......................................................................................... 11

                  a.    U.S. Cellular has not purposefully directed any activities at
                        residents of the Eastern District. .................................... 12

                  b.    Klausner's patent infringement claims do not arise from
                        any U.S. Cellular activity within or relating to the Eastern
                        District............................................................................ 13

                  c.    It would be unreasonable to exercise personal jurisdiction
                        over U.S. Cellular based on tenuous contacts with the
                        Eastern District.............................................................. 13

            3.    U.S. Cellular Does Not Have A Regular And Established Place Of
                  Business In The Eastern District of Texas And Has Not Committed
                  Infringing Acts In The Eastern District. ..................................... 14

      B.    ALTERNATIVELY, THE CASE AGAINST U.S. CELLULAR SHOULD BE
            TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28
            U.S.C. § 1404(A). ................................................................................ 15

            1.    Relevant factors for transfer....................................................... 15

            2.    Factor 1: Relative ease of access to sources of proof favors
                  transfer. ....................................................................................... 16

            3.    Factor 2: Cost of attendance for willing witnesses favors transfer ........... 17

            4.    Factor 3: Availability of compulsory process favors transfer................... 18

            5.    Public Interest Factors: Local interest favors transfer .............................. 18

            6.    No factors weigh against transfer ............................................... 19

IV.   CONCLUSION.................................................................................................. 20

Case No. 6:12 CV 180

# TABLE OF AUTHORITIES

## CASES

*Acceleron, LLC v. Egenera, Inc.*
634 F. Supp. 2d 758 (E.D. Tex. 2009) ............................................................................ 7

*Access Telecomm., Inc. v. MCI Telcomms. Corp.*
197 F.3d 694 (5th Cir. 1999) ........................................................................................ 10

*Attachmate Corp. v. Celcom Axiata Berhad*
2010 U.S. Dist. LEXIS 123501, 2010 WL 4856793 (W.D. Wash. Nov. 22, 2010) ......... 10

*Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*
566 F.3d 1012 (Fed. Cir. 2009)................................................................................... 8, 9

*Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*
552 F.3d 1324 (Fed. Cir. 2008).................................................................................... 13

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*
223 F.3d 1082 (9th Cir. 2000) ....................................................................................... 8

*Bill Rea Insurance Associates, Inc. v. National Financial Services Corp.*
860 F. Supp. 1181 (W.D. Tex. 1994).............................................................................. 11

*Burger King Corp v. Rudzewicz*
471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)........................................... 11, 12

*Burstein v. State Bar of California*
693 F.2d 511 (5th Cir. 1981) ........................................................................................ 11

*Campbell Pet Co. v. Miale*
542 F.3d 879 (Fed. Cir. 2008)................................................................................... 11, 12

*Cannon Manufacturing Co. v. Cudahy Packing Co.*
267 U.S. 333, 45 S. Ct. 250 (1925).................................................................................. 9

*Cmty. Voice Line, L.L.C. v. MetroPCS Communs., Inc.*
No. C 11-4019-MWB, 2011 U.S. Dist. LEXIS 19350 (N.D. Iowa Feb. 25, 2011).......... 10

*Construction Aggregates v. Senior Commodity Co.*
860 F. Supp. 1176 (E.D. Tex. 1994)................................................................................ 9

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*
297 F.3d 1343 (Fed. Cir. 2002)................................................................................... 7, 14

*Elecs. for Imaging, Inc. v. Coyle*
340 F.3d 1344 (Fed. Cir. 2003).................................................................................... 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
131 S. Ct. 2846 (2011) .......................................................................................... 8, 9, 12

*Hanson v. Denckla*
357 U.S. 235 (1958).................................................................................................... 12

*Hargrave v. Fibreboard Corp.*
710 F.2d 1154 (5th Cir. 1983) ....................................................................................... 9

*Helicopteros Nacionales de Columbia, S.A. v. Hall*
466 U.S. 408 (1984).................................................................................................... 7

*In re Genentech*
566 F.3d 1338 (Fed. Cir. 2009).............................................................. 15, 16, 17, 18, 19

*In re Nintendo Co., Ltd.*
589 F.3d 1194 (Fed. Cir. 2009) ............................................................................... 1, 15

*In re TS Tech.*
551 F.3d 1315 (Fed. Cir. 2008) .................................................... 15, 16, 18, 19

*In re Volkswagen AG (Volkswagen I)*
371 F.3d 201 (5th Cir. 2004) ................................................................ 15, 17, 18

*In re Volkswagen of Am., Inc. (Volkswagen II)*
545 F.3d 304 (5th Cir. 2008) .................................................... 15, 16, 18, 19

*J. McIntyre Machinery, Ltd. v. Nicastro*
131 S. Ct. 2780 (2011) .......................................................................................... 13

*Johnston v. Multidata Sys. Int'l Corp.*
523 F.3d 602 (5th Cir., 2008) .............................................................................. 10

*Jones v. Petty-Ray Geophysical. Geosource. Inc.*
954 F.2d 1061 (5th Cir. 1992) ........................................................................... 5, 9

*Klausner Techs., Inc. v. Interactive Intelligence Group, Inc.*
No. 6:11-cv-00578-LED, filed February 21, 2012 ........................................ 20

*Klausner Techs., Inc. v. Taridium, LLC*
No. 6:11-cv-00593-LED, filed January 17, 2012 ......................................... 20

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*
232 F.3d 1369 (Fed. Cir. 2000) ............................................................................ 8

*New Comm Wireless v. SprintCom, Inc.*
213 F. Supp. 2d 61 (D.P.R. 2002) ...................................................................... 10

*Nuance Commc'ns, Inc. v. Abbyy Software House*
626 F.3d 1222 (Fed. Cir. 2010) ............................................................................. 7

*Red Wing Shoe Co., v. Hockerson-Halberstadt, Inc.*
148 F.3d 1355 (Fed. Cir. 1998) ........................................................................... 10

*SIAI Ins. Co. (RRG) Ltd. v. AON Risk Servs.*
2003 U.S. Dist. LEXIS 25581 (N.D. Tex. 2003) ........................................... 11

*Southmark Corp. v. Life Investors. Inc.*
851 F .2d 763 (5th Cir. 1988) ............................................................................... 9

*Technology Patents, L.L.C. v. Deutsche Telekom AG*
573 F. Supp. 2d 903 (D. Md. 2008) ................................................................... 10

*Thomas v. Centennial Communs. Corp.*
2006 U.S. Dist. LEXIS 92555, 2006 WL 6151153 (W.D.N.C. Dec. 20, 2006) ............... 10

*Touchcom, Inc. v. Bereskin & Parr*
574 F.3d 1403 (Fed. Cir. 2009) ........................................................................... 12

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*
395 F.3d 1275 (Fed. Cir. 2005) ............................................................................. 7

*VE Holding Corp. v. Johnson Gas Appliance Co.*
917 F.2d 1574 (Fed. Cir. 1990) ................................................................ 1, 6, 7, 14

*Walker v. Newgent*
583 F.2d 163 (5th Cir. 1978) ................................................................................ 9

iv

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*
 433 F.3d 1199 (9th Cir. 2006) ............................................................................ 8

## RULES

47 C.F.R. § 22.3 ............................................................................................... 3, 7, 9
Fed. R. Civ. P. 12 .................................................................................................. 5, 19
Fed. R. Civ. P. 45 ..................................................................................................... 17

## STATUTES

28 U.S.C. § 1391 ............................................................................................ 1, 5, 15
28 U.S.C. § 1400 ...................................................................................... 5, 13, 15, 19
28 U.S.C. § 1404 ........................................................................................... 1, 14, 19
35 U.S.C. § 299 ..................................................................................................... 19

## OTHER AUTHORITIES

H.R. 1249 § 19 ..................................................................................................... 19
H.R. Rep. No. 112-98 ........................................................................................... 19

## I.      INTRODUCTION

Klausner Technologies, Inc.("Klausner") filed in this Court this patent infringement case against United States Cellular Corporation ("U.S. Cellular"), a Chicago-based regional wireless service carrier, even though U.S. Cellular has no business operations in the Eastern District of Texas and is not even licensed to provide wireless service in the Eastern District of Texas. Venue is improper in this judicial district because U.S. Cellular would not be subject to personal jurisdiction in the Eastern District if the district were a state, which is the test for venue in a patent infringement suit.  28 U.S.C. § 1391(c); *VE Holding Corp. v. Johnson Gas Appliance Co*., 917 F.2d 1574, 1578 (Fed. Cir. 1990) ("On its face, § 1391(c) clearly applies to § 1400(b), and thus redefines the meaning of the term 'resides' in that section.").  And Klausner's lone venue allegation against U.S. Cellular — that "[v]enue is proper in this Court because the Defendant is responsible for acts of infringement occurring in the Eastern District of Texas as alleged in this Complaint, and has delivered or caused to be delivered its infringing products in the Eastern District of Texas"[1] — is incorrect.  Accordingly, this case should be dismissed.

Even if venue were to lie in this District, the convenience of the parties and witnesses overwhelmingly favors transferring this case to the Northern District of Illinois.  For starters, Klausner, a non-practicing entity, is a New York corporation with no offices or business operations in the District.  Klausner's lead counsel and executives are located in New York.

On the other hand, U.S. Cellular's headquarters is in Chicago, all of its key witnesses and evidence are located in Chicago, and no witnesses or evidence are located in this District. Indeed, the only connection with this District is the fact that Klausner has hired local counsel with offices in this District.  Accordingly, should the motion to dismiss be denied, the Court should exercise its discretion pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Northern District of Illinois for the convenience of the parties and witnesses and in the interest of justice.  *See, e.g., In re Nintendo Co., Ltd*., 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer

---

[1]  (Doc. 1 ¶ 3.)

to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.") [2]

## II.     FACTUAL BACKGROUND

### A.     The Parties

Klausner is a New York corporation.  (Doc. 1 ¶ 4.)  The Texas Secretary of State's website has no record of Klausner having registered to do business in Texas.  Declaration of Demarron Berkley ("Berkley Decl.") ¶ 2.[3]  U.S. Cellular is a wireless service carrier incorporated in Delaware, with its principal place of business and corporate headquarters in Chicago, Illinois.  Declaration of Stephen P. Fitzell ("Fitzell Decl.") ¶ 3.[4]

Klausner claims that U.S. Cellular infringes the patent-in-suit "by manufacturing, using, selling, and offering for sale, visual voicemail products that use or embody the patented invention."  (Doc. 1 ¶ 9.)  Klausner alleges that this Court has personal jurisdiction over U.S. Cellular, and, as stated,  that venue is proper "because the Defendant is responsible for acts of infringement occurring in the Eastern District of Texas as alleged in this Complaint, and has delivered or caused to be delivered its infringing products in the Eastern District of Texas."

---

[2]  In an effort to avoid burdening the Court with this motion to dismiss, the undersigned counsel, nearly two weeks before filing this motion, sent counsel for Klausner the following email (see Berkley Decl. ¶ 6) , to which Klausner's counsel has yet to respond:

> Bill / Pierre,
>
> As you are aware we represent U.S. Cellular in the above-referenced action alleging infringement based on the "visual voicemail" feature of unidentified smart phones.  We have investigated your claim and have determined that no U.S. Cellular phone has a "visual voicemail" feature.
>
> As you also should be aware, U.S. Cellular does not provide cellular service in the Eastern District of Texas and does not have a license to do so.
>
> I suggest that we have a teleconference within the next week to discuss the basis of plaintiff's allegations against U.S. Cellular.  We would like to avoid the expense of filing motions as to the apparent lack of any basis to sue U.S. Cellular at all and in the Eastern District of Texas in particular.
>
> Please advise when you are available to discuss.  It would be helpful if you could forward to us in advance of the call any claim chart or other individualized infringement analysis you have performed against U.S. Cellular.
>
> Regards,
>
> Steve Malin

[3]  The Berkley Declaration is attached to the current motion.
[4]  The Fitzell Declaration is attached to the current motion.

(Doc. 1 ¶ 3.).  Klausner alleges no specific facts in support of its venue claim, but rather relies solely on this thread-bare, conclusory assertion.  As is shown below, these venue allegations are incorrect as to U.S. Cellular.

**B.     U.S. Cellular Is Not Subject To Personal Jurisdiction In The Eastern District Of Texas.**

U.S. Cellular does not currently provide and has not provided wireless service in the District since 1995.  Fitzell Decl. ¶ 5.  Wireless service can only be provided pursuant to a license from the Federal Communications Commission (the "FCC").  A FCC wireless license authorizes service only for the specific geographic area covered by the license.  *See* 47 C.F.R. § 22.3.  None of U.S. Cellular's existing licenses authorize it to provide service within the Eastern District of Texas.  Fitzell Decl. ¶ 9.  Accordingly, U.S. Cellular does not maintain any cell towers or other equipment in the District.  Fitzell Decl. ¶ 8.

Like other wireless carriers, U.S. Cellular operates via retail stores, some of which are owned by the company and the rest by independent agents.  About 400 of U.S. Cellular's stores are company owned and about 1,000 agent-owned.  Fitzell Decl. ¶ 6.  *None* of these 1,400 stores are located within the Eastern District of Texas.  U.S. Cellular does not have any other business offices in the Eastern District of Texas.  Fitzell Decl. ¶ 6.  U.S. Cellular does not have an agent for service of process in the Eastern District of Texas; does not own any real property in the Eastern District of Texas; does not have any bank accounts in the Eastern District of Texas; and does not maintain a telephone listing in the Eastern District of Texas.  Fitzell Decl. ¶ 6.  U.S. Cellular has approximately 8,400 employees.  None are officed in the Eastern District of Texas.  Fitzell Decl. ¶7.

U.S. Cellular does not solicit business in the Eastern District of Texas.  U.S. Cellular's advertising is directed to consumers in the markets where it has operations, none of which are in the Eastern District of Texas.  Fitzell Decl. ¶ 10.  U.S. Cellular offers its service over its website. However, in order to obtain service in that fashion, one must first provide a billing zip code that is within a U.S. Cellular service area.  Providing a zip code within an area for which U.S.

Cellular does not provide service — including the Eastern District of Texas — results in the following message:  "We're sorry but we do not offer our products & services in this area. Please enter a different zip code or search by city/state."  Fitzell Decl. ¶ 13.  U.S. Cellular does not ship or import any mobile phones or voicemail products into the District.  Fitzell Decl. ¶ 11.

What meager contacts U.S. Cellular has *with* (not necessarily *in*) this District fall far short of subjecting U.S. Cellular to personal jurisdiction.  First, U.S. Cellular has roaming agreements with third party carriers to provide service to U.S. Cellular's customers on those other carriers' networks when U.S. Cellular customers are physically present — i.e., "roaming" — within this District.  As shown below, courts have consistently rejected this kind of "contact" as being meaningful for personal jurisdiction purposes.

Second, U.S. Cellular indirectly owns an interest in one of the limited partners of a Delaware limited partnership that owns a license covering one county in the Eastern District.  However, this interest is not held by U.S. Cellular, but rather by a separate company that is a three-times removed from U.S. Cellular:



Fitzell Decl. ¶ 9.  As shown below, a legal entity's contacts with a forum, even one that is 100%

owned by another, cannot be attributed to the owner.  *See, e.g., Jones v. Petty-Ray Geophysical.*

*Geosource. Inc.*, 954 F.2d 1061, 1070 n.12 (5th Cir. 1992) (The "mere stock ownership in Texas

businesses" does not reflect "an activity 'purposefully directed' toward Texas.").

Third, the Eastern District of Texas shares a border with areas of southern Oklahoma

where U.S. Cellular does provide service and have stores.  Of U.S. Cellular's approximately

6,000,000 total customers, approximately 300 have billing addresses in the Eastern District of

Texas, less than 0.01% of U.S. Cellular's total customers.  Fitzell Decl. ¶ 12.  Whether these

customers signed up for service at a nearby Oklahoma store or some other U.S. Cellular store

and relocated to the Eastern District of Texas, it cannot be denied that U.S. Cellular does not

market its service to the Eastern District of Texas, does not (indeed cannot) provide wireless service within the Eastern District, and has no operations within the Eastern District.

## III.   ARGUMENT

### A.   The Complaint Should Be Dismissed For Improper Venue Because Personal Jurisdiction Would Not Exist Over U.S. Cellular In The Eastern District of Texas.

Klausner's complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(3) for improper venue under 28 U.S.C. § 1400(b), which governs venue for patent infringement actions. *VE Holding Corp.*, 917 F.2d at 1575 ("[S]ection 1400(b) of chapter 87, title 28, U.S. Code, has set forth the bases for establishing venue in patent infringement actions."). Under § 1400(b), venue is proper in the judicial district where: (1) the defendant resides; or (2) where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b).

28 U.S.C. §1391(c), which defines "resides" as used in the first prong of § 1400(b), states that, for the purposes of venue, a defendant-corporation resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *VE Holding Corp.*, 917 F.2d at 1578 ("On its face, § 1391(c) clearly applies to § 1400(b), and thus redefines the meaning of the term 'resides' in that section."). If a state has more than one district, "a corporation is deemed to reside in any district in the state within which its contacts would be sufficient to subject it to personal jurisdiction if the district were a separate state…." *Id.*

The first test under § 1400(b) — determining venue by where the defendant resides — is the only necessary inquiry in deciding whether the Eastern District of Texas is a proper venue for U.S. Cellular. The second test under § 1400(b) — determining venue by where the defendant committed infringing acts and has a regular and established place of business — is superfluous because a corporate defendant would necessarily be subject to personal jurisdiction in a forum where the corporation has a *regular and established* place of business and has *committed*

*infringing acts*. *See VE Holding Corp.*, 917 F.2d at 1580 (explaining that "the second test under § 1400 (b) become[s] superfluous and thus meaningless" when determining venue for corporate defendants). Therefore, the Eastern District of Texas is a proper venue only if personal jurisdiction over U.S. Cellular would exist if the Eastern District were a state. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction.").

Federal Circuit law applies to determinations of personal jurisdiction over defendants in patent infringement cases. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002). In order to exercise personal jurisdiction over a defendant in a patent case, "the court must determine whether an applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and whether the exercise of jurisdiction would satisfy the requirements of due process." *Id.* at 1349. Because Texas' long-arm statute authorizing service of process "reaches as far as the federal constitutional requirements of due process will allow," *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769 (E.D. Tex. 2009) (internal quotations omitted), these two inquiries collapse into a single question: whether the exercise of personal jurisdiction comports with due process. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230–31 (Fed. Cir. 2010). The plaintiff bears the burden of showing the court's personal jurisdiction over the defendant. *See Deprenyl Animal Health*, 297 F.3d at 1351.

Due process requires a nonresident defendant to have at least "minimum contacts" with the forum to be subject to personal jurisdiction. *Deprenyl Animal Health*, 297 F.3d at 1350. Personal jurisdiction may be general or specific. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

> **1. General personal jurisdiction would not exist over U.S. Cellular because U.S. Cellular has not carried on "continuous and systematic" contacts within the Eastern District.**

General personal jurisdiction over a corporate defendant exists when the defendant: engages in continuous and systematic contacts with the forum such that it is "essentially at home

in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011);
*see LSI Indus. Inc. v. Hubbell Lighting, Inc*., 232 F.3d 1369, 1375 (Fed. Cir. 2000).
"[A]ttenuated contacts" are insufficient—rather, the defendant must be "essentially at home in
the forum." *Goodyear,* 131 S. Ct. at 2857; *accord, Autogenomics, Inc. v. Oxford Gene Tech.,
Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009); *see Goodyear*, 131 S. Ct. at 2857.  Factors
considered in evaluating the extent of a defendant's contacts with a forum include whether the
defendant makes sales, solicits or engages in business, designates an agent for service of process,
holds a license, or is incorporated in the forum state.  *See, e.g., Bancroft & Masters, Inc. v.
Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), overruled in part on other grounds by
*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)
(en banc).

These factors are each absent here.  U.S. Cellular does not engage in continuous and
systematic business contacts with the Eastern District.  In order to carry on the business of being
a wireless service carrier within a given geographic area, a license from the FCC is required
authorizing the provision of wireless service within that geographic area.  47 C.F.R. § 22.3.  U.S.
Cellular has no license for any portion of the Eastern District of Texas, and is prohibited from
providing wireless service in that geographic area.  Fitzell Decl. ¶ 9.  Thus, U.S. Cellular has no
cell towers or other equipment located in the Eastern District.  Fitzell Decl. ¶ 8.  *None* of U.S.
Cellular's 1,400 affiliated retail stores or 8,400 employees are located within the Eastern District
of Texas.  Fitzell Decl. ¶ 6-7.  U.S. Cellular does not have an agent for service of process in the
Eastern District of Texas; does not own any real property in the Eastern District of Texas; does
not have any bank accounts in the Eastern District of Texas; and does not maintain a telephone
listing in the Eastern District of Texas.  Fitzell Decl. ¶ 6.  U.S. Cellular does not solicit business
in the Eastern District of Texas, and potential customers with addresses in the Eastern District
are refused by the website.  Fitzell Decl. ¶¶ 10, 13.  U.S. Cellular does not ship or import any
mobile phones or voicemail products into the District.  Fitzell Decl. ¶ 11.  Like the defendant in
*Autogenomics*, U.S. Cellular "has no actual physical presence or license to do business" in the

Eastern District, and has made no contacts sufficient to establish general jurisdiction.  566 F.3d at 1018.  U.S. Cellular is "in no sense at home" in the Eastern District.  *Goodyear*, 131 S. Ct. at 2857.

U.S. Cellular's indirect, passive, and minority-ownership interest in a Delaware limited partnership owning an FCC wireless license partially covering Cooke County, Texas, is insufficient to create general jurisdiction in the Eastern District.  The "mere stock ownership in Texas businesses" does not reflect "an activity 'purposefully directed' toward Texas."  *Petty-Ray Geophysical*, 954 F.2d at 1070 n.12.  "[E]ven ownership of 100% of the stock of a subsidiary is alone insufficient to fuse the subsidiary into the parent for purposes of establishing minimum contacts."  *Id.; Walker v. Newgent*, 583 F.2d 163,167 (5th Cir. 1978).  As long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in the forum may not be attributed to the other.  *See Southmark Corp. v. Life Investors. Inc.*, 851 F .2d 763, 773-74 (5th Cir. 1988); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983); *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335, 45 S. Ct. 250 (1925).  Here, there are separate and distinct corporate entities at several levels.  *See* Figure, *supra*.  Indeed, U.S. Cellular is three-times removed from the partnership having a license to operate in the Eastern District.  Moreover, even if U.S. Cellular were itself a limited partner in the partnership, a defendant's passive ownership in a Texas limited partnership is insufficient to create general jurisdiction.  *Construction Aggregates v. Senior Commodity Co.*, 860 F. Supp. 1176, 1180 (E.D. Tex. 1994) (noting that "if [the defendant] had significant control over [the limited partnership], hailing [him] into court in Texas based on a general presence theory might not offend due process.").  Because U.S. Cellular is a mere indirect owner with no control, the Delaware partnership's contacts are not U.S. Cellular's.

Nor does the existence of roaming agreements do anything to create personal jurisdiction over U.S. Cellular.  Roaming agreements enable third party carriers to provide service to U.S. Cellular's customers as they travel outside of U.S. Cellular's service area.  It cannot be disputed that U.S. Cellular is prohibited by federal law from providing service in the Eastern District.  47

C.F.R. § 22.3; Fitzell Decl. ¶ 9.  And every decision located by U.S. Cellular's counsel that has addressed the question of whether roaming agreements are sufficient to confer jurisdiction has decided that they are not.  *Cmty. Voice Line, L.L.C. v. MetroPCS Communs., Inc.*, No. C 11-4019-MWB, 2011 U.S. Dist. LEXIS 19350 at *5-6 (N.D. Iowa Feb. 25, 2011) (collecting cases and recognizing that "every court to consider the question has held that 'roaming' agreements are not sufficient to establish personal jurisdiction over a cellular service provider"); *Attachmate Corp. v. Celcom Axiata Berhad*, 2010 U.S. Dist. LEXIS 123501, 2010 WL 4856793 at *3 (W.D. Wash. Nov. 22, 2010) (finding no jurisdiction based on roaming agreements); *Technology Patents, L.L.C. v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 914-15 & n.14 (D. Md. 2008) (same); *Thomas v. Centennial Communs. Corp.*, 2006 U.S. Dist. LEXIS 92555, 2006 WL 6151153 *3 (W.D.N.C. Dec. 20, 2006) (same); *cf. New Comm Wireless v. SprintCom, Inc.*, 213 F. Supp. 2d 61, 69-70 (D.P.R. 2002) (where disregard for roaming agreement was basis for specific jurisdiction).

The unifying theme of these cases is that "'doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state].'"  *Technology Patents*, 573 F. Supp. 2d at 914-15; *accord Red Wing Shoe Co., v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota."); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir., 2008) ("It is not enough to do business *with* Texas.") (emphasis in original); *Access Telecomm., Inc. v. MCI Telcomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) ("telecommunications companies do business with each other…, but neither is doing business in the other [forum] for jurisdictional purposes").  U.S. Cellular's roaming agreements, accordingly, would not subject U.S. Cellular to personal jurisdiction in the Eastern District.

Lastly, the mere fact that an extremely small number of U.S. Cellular customers currently have billing addresses within this District (Fitzell Decl. ¶ 12) would not subject U.S. Cellular to personal jurisdiction in this District.  As explained, U.S. Cellular does not and cannot provide

wireless service to these handful of customers while they are in the Eastern District.  Fitzell Decl.
¶¶ 5, 9.  For venue to exist, U.S. Cellular must have "purposefully" directed its activities towards
the Eastern District's residents.  *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 473-75, 105 S.
Ct. 2174, 85 L. Ed. 2d 528 (1985) (the "constitutional touchstone remains whether the defendant
purposefully established 'minimum contacts' in the forum[.]").  Since U.S. Cellular maintains no
stores or employees in the District, does not have the necessary FCC license to provide service in
the District, and does not advertise in the District, it cannot be fairly argued that it has purposely
directed its business activities at residents of the District.  How these few hundred persons
residing in the District obtained service in the first instance is anybody's guess, but they did not
obtain them from U.S. Cellular's website or from any retail outlet within the Eastern District.
Sending bills to a few hundred customers within the District is insufficient because "a
nonresident defendant does not conduct continuous and systematic activity in the forum state by
merely seeking payment from persons in the forum state."  *SIAI Ins. Co. (RRG) Ltd. v. AON Risk
Servs.*, 2003 U.S. Dist. LEXIS 25581 *14-*15 (N.D. Tex. 2003); *accord Burstein v. State Bar of
California*, 693 F.2d 511 (5th Cir. 1981) (holding that where nonresident defendant's only
contacts with forum involved sending membership fee statements and information to its fifty
members living in the forum, the court did not have jurisdiction over the defendant); *Bill Rea
Insurance Associates, Inc. v. National Financial Services Corp.*, 860 F. Supp. 1181, 1185 (W.D.
Tex. 1994) (collecting money for stock purchases and maintaining monthly statements found
insufficient for general jurisdiction where defendant did not solicit customers in the forum).

> **2.**     **Specific personal jurisdiction also would not exist over U.S. Cellular.**

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected
with, the very controversy that establishes jurisdiction."  *Id.* at 2851 (internal quotation marks
omitted).  It arises when "the defendant has purposefully directed his activities at residents of the
forum" and "the litigation results from alleged injuries that arise out of or relate to those
activities," so long as the exercise of personal jurisdiction "would comport with fair play and
substantial justice."  *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008), quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. at 472–73, 476 (1985); *see also Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411–12 (Fed. Cir. 2009), quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum[ ], thus invoking the benefits and protections of its laws.").

In determining whether the exercise of specific personal jurisdiction comports with due process, the Federal Circuit considers "(1) whether the defendant has purposefully directed its activities at residents of the forum; and (2) whether the litigation results from alleged injuries that arise out of or relate to those activities." *Campbell Pet*, 542 F.3d at 884 (internal quotation marks omitted); *see also Goodyear*, 131 S. Ct. at 2851 (specific personal jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction"). If the plaintiff carries its burden with respect to both prongs, the court considers "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Campbell Pet*, 542 F.3d at 884, quoting *Burger King*, 471 U.S. at 476.

Because U.S. Cellular conducts no meaningful activities in the Eastern District of Texas, none of these elements are met. Therefore, specific personal jurisdiction does not exist over U.S. Cellular in the Eastern District of Texas and exercising such jurisdiction would violate due process.

### a.   U.S. Cellular has not purposefully directed any activities at residents of the Eastern District.

U.S. Cellular has engaged in no conduct promoting the transaction of business in the Eastern District of Texas since 1995. U.S. Cellular engages in no activity whatsoever expressly aimed at the Eastern District of Texas, because U.S. Cellular does not offer wireless services in the District. Fitzell Decl. ¶¶ 5–9. Nor does U.S. Cellular directly advertise to the Eastern District's residents or solicit any business from them. Fitzell Decl. ¶ 10. Because U.S. Cellular has not purposefully aimed *any* activities at the Eastern District of Texas, Klausner cannot satisfy the first prong of the test for specific personal jurisdiction. *See J. McIntyre Machinery, Ltd. v.*

*Nicastro*, 131 S. Ct. 2780, 2789 (2011) (plurality opinion) ("The question is whether a defendant has followed a course of conduct directed at the society or economy existing within [the forum].").

> **b.** **Klausner's patent infringement claims do not arise from any U.S. Cellular activity within or relating to the Eastern District.**

Even if U.S. Cellular had engaged in some meaningful contacts with the Eastern District of Texas (which, as explained above, it has not), Klausner's patent infringement claim does not arise out of any U.S. Cellular activity within or relating to the Eastern District.  As the Federal Circuit has observed, in a patent infringement case, "for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum."  *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).  The inquiry could hardly be easier here:  U.S. Cellular does not make, use, sell, offer to sell, or import mobile communication devices in the Eastern District of Texas — there is no commercialization of the accused products by U.S. Cellular in the Eastern District whatsoever.  Fitzell Decl. ¶¶ 6–7, 10–11.  U.S. Cellular also has no equipment in the Eastern District to perform the claimed method steps.  Fitzell Decl. ¶¶ 8, 15.  Klausner's patent infringement claim does not arise from any U.S. Cellular activity within or relating to the Eastern District of Texas, and Klausner cannot satisfy the second prong of the test for specific personal jurisdiction.

> **c.** **It would be unreasonable to exercise personal jurisdiction over U.S. Cellular based on tenuous contacts with the Eastern District.**

Even if Klausner were able to establish the first two prongs of the test for specific personal jurisdiction over U.S. Cellular (again, as explained above, it can establish neither), exercising such jurisdiction would be unreasonable within the meaning of due process.  The Federal Circuit considers five factors in determining reasonableness:  (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining relief; (4) the judiciary's interest in efficient resolution of controversies; and

(5) the interests of all states in furthering social policy.  *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351–52 (Fed. Cir. 2003).  None of these factors weigh in favor of an exercise of jurisdiction.

Holding a trial in the Eastern District of Texas would significantly burden U.S. Cellular because it is not located within the District.  Fitzell Decl. ¶¶ 3, 5.  Since none of U.S. Cellular's employees or business operations are located within the Eastern District, it is axiomatic that its witnesses and documentary evidence are all located outside the Eastern District.  Klausner has not registered with the Secretary of State to do business in Texas, and there is no evidence that it has a business presence in the Eastern District.  The Eastern District does not have a strong interest in resolving a claim that does not involve any of the Eastern District's other residents or allegedly infringing activity occurring outside the Eastern District's borders.  *Cf. Deprenyl Animal Health*, 297 F.3d at 1356 (noting that a forum has a "substantial interest in preventing patent infringement *within its borders*") (emphasis added).

### 3.     U.S. Cellular Does Not Have A Regular And Established Place Of Business In The Eastern District of Texas And Has Not Committed Infringing Acts In The Eastern District.

Under the second test in § 1400(b), venue is proper if U.S. Cellular:  (1) has a regular and established place of business in the Eastern District of Texas; *and* (2) committed infringing acts in the Eastern District.  28 U.S.C. § 1400(b) (2010).  Although superfluous in this instance, venue is also improper under the second test in § 1400(b).  *See VE Holding Corp.*, 917 F.2d at 1580.  U.S. Cellular does not have a regular and established place of business in the Eastern District of Texas because it does not provide wireless service, operate any retail stores, or conduct any business operations in the District.  Fitzell Decl. ¶¶ 3–8.  U.S. Cellular has not committed any infringing acts within the Eastern District because it does not own any equipment or devices in the district that perform or embody the claimed methods and apparatuses.  Fitzell Decl. ¶¶ 5, 8, 11, 15.  Accordingly, venue cannot be established under the second test in § 1400(b).

**B.    Alternatively, the Case Against U.S. Cellular Should Be Transferred to the Northern District of Illinois Pursuant to 28 U.S.C. § 1404(a).**

**1.    Relevant factors for transfer**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought."  The threshold question of a section 1404(a) analysis is whether the lawsuit could have been brought in the judicial district to which transfer is sought. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004).  If the transferee district is proper, then the court must weigh the relative conveniences of the current district against the transferee district.  *Id.*  In making the convenience determination, the Fifth Circuit considers several "private" and "public" interest factors, none of which are given dispositive weight.[5]  *Id.*; *Nintendo*, 589 F.3d at 1198-99.

The private interest factors are:  (1) the relative ease of access to sources of proof; (2) the cost of attendance for willing witnesses; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008).  The "public" interest factors include:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Nintendo*, 589 F.3d at 1198; *In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech*., 551 F.3d 1315, 1319 (Fed. Cir. 2008); *Volkswagen II*, 545 F.3d at 315.

A civil action for patent infringement may be brought in any district where the defendant resides.  28 U.S.C. § 1400(b).  U.S. Cellular's principal place of business is in Chicago, Illinois, in the Northern District of Illinois.  Fitzell Decl. ¶ 3.  Hence, the answer to the threshold question

---

[5]  The Federal Circuit has noted that the Fifth Circuit forbids treating the plaintiff's choice of venue as a separate factor in the analysis of a request to transfer for the convenience of the parties, because it is already accounted for in the moving party's burden to demonstrate that the transferee venue is a "clearly more convenient venue."  *TS Tech*, 551 F.3d at 1320.

of whether the Northern District of Illinois is a proper venue is clearly "yes."  *See* 28 U.S.C. § 1400; 28 U.S.C. § 1391(c) (stating "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.").  The "private" and "public" factors favor transfer of this case to the Northern District of Illinois.

2.      **Factor 1: Relative ease of access to sources of proof favors transfer.**

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor.  *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321.  Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases.  *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

U.S. Cellular's headquarters is located in the Northern District of Illinois.  Its engineering and technical staff that handle voicemail features are headquartered there (as are their technical documents).  Fitzell. Decl. ¶16.  The equipment used to host voicemail are also located outside of the Eastern District of Texas.  Fitzell. Decl. ¶15.  Furthermore, its marketing department, involved with marketing U.S. Cellular's services, is located at its Chicago headquarters.  Fitzell Decl. ¶ 17.  As explained above, U.S. Cellular maintains no operations or equipment in the Eastern District of Texas.  U.S. Cellular is not aware of *any* sources of proof that are located in the Eastern District.

Keeping this case in the Eastern District of Texas would impose a significant and unnecessary burden on U.S. Cellular to transport documents that would not be incurred if the case were to proceed in the Northern District of Illinois.  Klausner, a New York company, presumably has no documents in the Eastern District of Texas.  The sources of evidence for this case reside *outside* the Eastern district, with many of them within the borders of the Northern District of Illinois.  Thus, this factor favors transfer.

### 3.    Factor 2: Cost of attendance for willing witnesses favors transfer

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205.

U.S. Cellular's witnesses are located in the Northern District of Illinois.  Fitzell Decl. ¶¶ 16-17; *see also Genentech*, 566 F.3d at 1343-44 (finding that petitioners' showing of potential witnesses with relevant information in the requested judicial district without identifying "key witnesses" was still sufficient for convenience factor to weigh in favor of transfer).  The Northern District of Illinois courthouse is about fifteen miles from U.S. Cellular's headquarters. Berkley Decl. ¶ 3.  In contrast, the courthouse in the Eastern District of Texas is over 920 miles from U.S. Cellular's headquarters.  Berkley Decl. ¶ 3.

U.S. Cellular is aware of no witnesses who reside in the Eastern District or that are within 100 miles of this Court.  The inventors of the '576 Patent appear to be residents of New York and California.  *See* '576 Patent "Inventors."  Klausner is a New York company, and its headquarters appears to be in Sagaponack, New York.  Berkley Decl. ¶ 4.  Thus, Klausner has already opted to litigate outside of its home forum.  And the travel from New York to Tyler is no less burdensome than from New York to Chicago.  Indeed, having made that election, litigating this case in the Northern District of Illinois is arguably more convenient for Klausner than litigating in this judicial district.  The Klausner headquarters is about 888 miles from Chicago and close to 1600 miles from Tyler, Texas. According to the website *Orbitz.com*, there are generally about 100 direct daily flights from New York to Chicago, compared to no direct flights from New York to Tyler.  Additionally, the direct flight time (2.5 hours) and costs (most under $150) are less from New York to Chicago than from New York to Tyler (7 to 10 hours and over $400).  Berkley Decl. ¶ 5.  Flying to Dallas from New York fairs only slightly better for

Klausner.  Compared to Chicago, the direct flights are fewer (35), longer (4 hours), and more expensive ($200-300).  Berkley Decl. ¶ 5.  A transfer will not create any additional inconvenience for Klausner.

The overall cost will be smaller and the convenience greater to the witnesses and parties on both sides if the case is transferred to the Northern District of Illinois.  Thus, this factor too weighs in favor of transfer.

### 4.  Factor 3: Availability of compulsory process favors transfer

A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not.  *Volkswagen II*, 545 F.3d at 316.  Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse.  *Id.*  U.S. Cellular is aware of no witnesses who would be subject to the subpoena power of this Court.  However, those witnesses working at U.S. Cellular's Chicago headquarters and nearby offices would all be subject to compulsory process by the federal court in the Northern District of Illinois.

### 5.  Public Interest Factors: Local interest favors transfer

Although three of the four "public" factors are essentially neutral,[6] one plainly favors transfer:  the local interest in having localized interests decided at home.  Courts consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004).  Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.  *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

---

[6]  For example, "court congestion" is neutral as the average times from filing to trial in the Eastern District of Texas and Northern District of Illinois are 26.1 and 27.1 months, respectively.  See U.S. District Courts, Table C-5: Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, (2008), http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/JudicialBusiness2011.pdf. This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors."  *Genentech*, 566 F.3d at 1347.

Case No. 6:12 CV 180

As explained above, this case has no connection to the Eastern District.  It has vast connections to the Northern District of Illinois.  U.S. Cellular is headquartered in the Northern District of Illinois and all U.S. Cellular witnesses, documents, and activity related to the accused services are centered in that judicial district.  The Northern District of Illinois, therefore, has an interest in the case such that transfer is warranted.

### 6. No factors weigh against transfer

In contrast to the factors weighing in favor of transfer, no factors weigh against transfer. No evidence or witnesses are located in the Eastern District of Texas.  There is no cost advantage to litigating the case in the Eastern District of Texas.  No parties are located in the Eastern District of Texas.  Texas law does not apply and there is no local Texas interest.  Thus, this case should be transferred to the Northern District of Illinois if it is not dismissed outright for improper venue.  *See TS Tech.*, 551 F.3d at 1322 (finding mandamus relief appropriate where "not a single relevant factor favored the plaintiff's chosen venue"); *accord, Volkswagen II,* 545 F.3d at 318 (same).

Klausner may argue that its suits against other defendants brought in this Court warrant keeping this case in the Eastern District of Texas.  Such an argument would be bankrupt for several reasons.  First, "[t]he Supreme Court has long held that § 1401(a) requires 'individualized, case-by-case consideration of convenience and fairness.'"  *Genentech*, 566 F.3d at 1347.  Klausner cannot deprive U.S. Cellular of its right to such an individualized consideration of convenience and fairness to it simply by virtue of Klausner's election to sue other defendants in this District.

Second, such an argument is flatly at odds with 35 U.S.C. § 299, as amended by § 19 of the American Invents Act (H.R. 1249), enacted to curtail the improper joinder of dozens of defendants in a single patent action in an inconvenient forum.  *See, e.g.,* H.R. Rep. No. 112-98, pt. 1 at 54 ("The [American Invents Act] also addresses the problems occasioned by the joinder of defendants (sometimes numbering in the dozens) who have tenuous connection to the underlying disputes in patent infringement suits.")

And third, the other "related" cases involve unrelated accused instrumentalities, manufactured, sold, and offered by unrelated defendants.  Klausner has alleged no overlap of accused products or services.  (Two of the other defendants have already also challenged venue as being improper or inconvenient.  *See Klausner Techs., Inc. v. Taridium, LLC,* No. 6:11-cv-00593-LED, Pl. Mot. to Dismiss (Doc. 9), filed January 17, 2012; *and Klausner Techs., Inc. v. Interactive Intelligence Group, Inc.*, No. 6:11-cv-00578-LED, Pl. Mot. to Transfer Venue (Doc. 15), filed February 21, 2012.)

## IV.    CONCLUSION

The case should be dismissed for improper venue pursuant to FED. R. CIV. P. 12(b)(3) because personal jurisdiction does not exist over U.S. Cellular within the Eastern District of Texas, as required by 28 U.S.C. § 1400(b).  In the alternative, the case should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) because it is the more convenient forum.

Dated:  May 16, 2012            UNITED STATES CELLULAR CORPORATION


By:     /s/ *Steve Malin*
        Steve Malin, SBN 12859750
        smalin@sidley.com
        Demarron A. Berkley, SBN 24050287
        dberkley@sidley.com
        Sidley Austin LLP
        717 North Harwood,
        Suite 3400
        Dallas, Texas  75201
        Telephone:  (214) 981-3300
        Facsimile:  (214) 981-3400

        Richard J. O'Brien, SBN 3125248
        robrien@sidley.com
        Sidley Austin LLP
        One South Dearborn Street
        Chicago, Illinois  60603
        Telephone:  (312) 853-7000
        Facsimile:  (312) 853-7036

        Attorneys for U.S. Cellular Corporation

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 16, 2012 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system, per Local Rule CV-5.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

/s/ *Steve Malin*
Steve Malin